IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

VALERIE BOGGS,                )
                              )
        Plaintiff,            )
                              )
v.                            )   Case No. CIV-16-1481-C
                              )
CEDAR CREEK, LLC              )
                              )
        Defendant.            )

MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Cedar Creek, LLC's Motion for Summary Judgment (Dkt. No. 24). Plaintiff has responded and the Motion is now at issue.

I. Background

Defendant employed Plaintiff as a human resources assistant when she suffered a panic attack at work on January 29, 2014. Plaintiff's supervisor, Michelle Lewis, witnessed the attack. Plaintiff's attacks were generally triggered by anxiety caused by driving, especially in unfavorable weather conditions.

On February 7, 2014, Plaintiff emailed Lewis and requested to work the 9:00-6:00 shift to avoid traffic and asked to work remotely from home. The same day Lewis responded via email that she would consider the flex schedule request and explained working remotely was not an option as Plaintiff needed to report to the office location. Although Plaintiff had worked from home before, remote access equipment was for occasional use only. Lewis's affidavit explains, and Plaintiff does not object, this

restriction was because human resource personnel must be physically present to access confidential personnel files and be accessible to Cedar Creek employees to address human resource issues.

Defendant states Plaintiff worked a flex schedule following the February 7 email, which Plaintiff does not materially dispute. On April 30, 2014, Plaintiff submitted a Family Medical Leave Request for Leave Form to Defendant, requesting intermittent Family and Medical Leave Act ("FMLA") leave beginning the same day. Defendant notified Plaintiff of its approval of her request for intermittent FMLA leave on May 2. On May 9, Plaintiff submitted an ADA Request for Reasonable Accommodation Form where she requested six accommodations: 1) work remotely from home; 2) allow a flexible work schedule for counseling and medication management; 3) allow flexible start and end times of the work day; 4) allow communication during work hours to receive support from doctor, family members, or others during times of anxiety; 5) allow breaks during the work shift when anxiety is starting to manifest; and 6) allow time to document the anxiety.

On June 20, 2014, Defendant responded to Plaintiff's ADA Request for Reasonable Accommodation Form. The response stated Plaintiff would not be allowed to work from her residence because Plaintiff's "job functions require [her] daily presence at the Company." (Cedar Creek Letter, Dkt. No. 24-15, p. 2.) Plaintiff was allowed a flexible work schedule "to avoid driving in high traffic and poor weather conditions" and Plaintiff could place calls for support during the work day and it would "be accounted for as intermittent FMLA leave." Plaintiff was instructed to "feel free to take breaks or employ other stress management techniques during the work day" and to close the door of her

office if she needed "privacy to place a call or take a stress management break." (Cedar Creek Letter, Dkt. No. 24-15, p. 2.) Defendant states, and Plaintiff does not object, that Plaintiff had been allowed these accommodations since February. Plaintiff and two supervisors met to discuss the accommodations and Plaintiff indicated she thought they were adequate.

Defendant describes a number of performance issues that took place in mid-2014 which were unrelated to Plaintiff's medical conditions. The issues include one circumstance of Plaintiff disregarding instructions given to her by Lewis, resulting in a written warning on April 29, 2014. Defendant describes three other incidents where Plaintiff made financial mistakes and one instance involving an incorrect wage garnishment with a court. Plaintiff does not deny the performance issues took place, but does deny they were serious infractions since no supervisor took disciplinary action at the time.

In May 2014, Defendant created a new position within the human resources department and hired an additional employee. Defendant created the position due to company growth and while Plaintiff's job title and compensation did not change, she was given some new responsibilities and some prior responsibilities were allocated to the new employee. Plaintiff and the new employee were cross-trained on each other's duties.

In August 2014, the human resource department, now composed of three employees, moved from private offices to one large workspace. Defendant states, and Plaintiff does not dispute, it relocated the department due to growth and reorganization of the company's corporate headquarters. Plaintiff complains this was an unreasonable

unilateral revocation of her accommodations allowing her to have a private space to make calls and perform stress management techniques throughout the day. Defendant offered new private space accommodations in the conference room, gym, restroom, or Plaintiff's vehicle. Following another performance issue where Plaintiff unilaterally reassigned her tasks to the new human resource employee, Lewis made the decision to terminate Plaintiff's employment effective September 15, 2014.

## II. Standard

The standard for summary judgment is well established. Summary judgment may only be granted if the evidence of record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(c). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. Discrimination in Violation of ADA/ADAAA

Federal law[1] requires "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

The McDonnell Douglas[2] burden-shifting standard applies to this claim and the analysis requires:

> (1) First, the plaintiff must establish a prima facie case of discrimination or retaliation;
> (2) If the plaintiff satisfies this initial burden, the defendant employer must offer a legitimate non-discriminatory reason for the adverse employment action; and
> (3) The burden then shifts back to the plaintiff who must show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual.

Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1307 (10th Cir. 2017) (citations and internal quotation marks omitted). To establish the prima facie case for an ADA discrimination claim, Plaintiff must show: "(1) she is a disabled person within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, with or without accommodation; and (3) the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability." Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 878 (10th Cir. 2004) (citation omitted). Defendant

---

[1] The parties make no distinction between the Americans with Disabilities Act ("ADA") and the ADA Amendments Act of 2008 ("ADAAA") in the briefs. The changes enacted by the ADAAA are not at issue in this case and thus no distinction is necessary.

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

does not dispute the first two requirements.  To show the termination was based on her disability, Plaintiff "must provide some evidence that her disability was a determining factor in [Defendant's] decision to terminate her."  Id.

Plaintiff argues the causal connection between her termination and the disability consists of Lewis's actions after she witnessed Plaintiff's anxiety attack.  Plaintiff states Lewis asked about her mental health progress and voiced her opinion that she missed the healthy version of Plaintiff.  Plaintiff admits the performance issues giving rise to the termination occurred and merely argues they must not have been significant because she was not disciplined.  This may be enough to make out a prima facie claim and the Court will continue with the analysis.

Defendant has offered a legitimate, non-discriminatory reason for the adverse employment action.  The deciding factor leading to Plaintiff's termination, which Plaintiff does not factually dispute, was her unilateral reassignment of payroll duties to another human resource employee.  Previous issues included Plaintiff disregarding chain-of-command instructions, setting up car payments as car allowances, sending child support garnishments to the wrong court, setting up a loan deduction instead of loan repayment, and reassigning personnel branch contacts without the required approval.  These reasons satisfy Defendant's burden.

The final step shifts the burden back to Plaintiff who must show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual.  "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate

6

reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Dewitt, 845 F.3d at 1307 (citation and internal quotation marks omitted). The Court's role is to prevent discriminatory practices, not to determine whether Defendant's decision was wise, fair, or correct. Id. at 1307-08.

Plaintiff argues the inference must weigh in her favor because her actions that caused Defendant embarrassment did not warrant disciplinary action and "suddenly" after Plaintiff sought ADA and FMLA relief she became a "problem employee." However, "mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988). Plaintiff's arguments are not supported by facts showing a weakness or other reason why Defendant's reason for the termination was not legitimate. Plaintiff has failed to uphold her burden and this claim fails as a matter of law.

## IV. Failure to Accommodate

Employers have a duty to make reasonable accommodations to otherwise qualified employees with known physical or mental limitations. See 42 U.S.C. § 12112(b)(5). Defendant argues it provided reasonable accommodations to Plaintiff. Plaintiff argues Defendant unreasonably delayed its answer to her request for accommodations by waiting

six weeks before providing accommodations[3] and Defendant later unreasonably revoked an accommodation by moving Plaintiff from a private office to a shared workspace.

For a failure to accommodate claim, Plaintiff must show: "(1) she is disabled; (2) she is 'otherwise qualified'; and (3) she requested a plausibly reasonable accommodation." Sanchez v. Vilsack, 695 F.3d 1174, 1177 (10th Cir. 2012) (citation omitted). A reasonable accommodation is defined as:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(A)-(B).

Defendant does not dispute the first two requirements and argues only one of the requested accommodations was unreasonable: working from home. A request to be relieved from an essential job function is not a reasonable request for accommodation as a matter of law. Mason v. Avaya Commc'ns, Inc., 357 F.3d 1114, 1122 (10th Cir. 2004). If the employee's physical attendance is an essential function of the position, then the request to work from home is unreasonable. Id. at 1124.

---

[3] Plaintiff complains of the delay between her May 9 ADA Request for Reasonable Accommodation Form and Defendant's June 20 response. However, Plaintiff admits she first requested accommodations on February 7 and Defendant responded the same day, granting all but one accommodation. Plaintiff had been using the accommodations from that date forward. The Court finds no merit in this complaint.

Here, Defendant states, and Plaintiff does not dispute, the employee working as a human resources assistant must "be present in the office to access confidential personnel information of other Cedar Creek employees, [] be readily accessible to Cedar Creek employees across the country . . . and [] be able to work with the rest of [the] Cedar Creek team in addressing human resources issues." (Dkt. No. 24, p. 9.) Plaintiff does not materially dispute the argument related to the third element and the Court agrees it was unreasonable to request to work from home because the job required Plaintiff's physical attendance.

The other requests for accommodation are not challenged and were met without complaint until Plaintiff moved offices, thus triggering the interactive process between Plaintiff and Defendant to determine the appropriate reasonable accommodation necessary. See 29 C.F.R. § 1630.2(o)(3). The process begins with the employee providing notice to the employer of the employee's disability, the resulting limitations, and requesting accommodations. Bartee v. Michelin N. Am., Inc., 374 F.3d 906, 916 (10th Cir. 2004). Next, the parties proceed with good-faith communications in a dialogue that will vary in each situation. Participation by both parties is required. Id.

The facts establish a pattern of dialogue and actions resulting in accommodations for Plaintiff that allowed her to perform her essential job functions well. Problems arose when the human resources department moved to a group office in August 2014. This essentially revoked Plaintiff's accommodations. Defendant proposed alternative private areas: a conference room, gym room, restroom, and Plaintiff's vehicle. Plaintiff objected to this proposal because rather than having the ability to immediately remove herself from

public view, she would have to cross the building through an area of salespeople to reach the new "private" areas that were still relatively open to others. The Court finds a reasonable jury could differ on whether Plaintiff's request to have a private space other than the secondary spaces offered was a reasonable request for accommodation. Summary judgment is denied on this issue.

## V. Retaliation in Violation of FMLA

Federal law provides eligible employees with twelve workweeks of leave per year if a serious health condition makes the employee unable to perform the functions of the employee's position. See 29 U.S.C. § 2612(a)(1)(D). The FMLA forbids employers from unlawfully discharging or discriminating against an individual, which the courts have also interpreted as creating a retaliation theory of recovery. See Dewitt, 845 F.3d at 1318. FMLA retaliation claims are subject to the McDonnell Douglas burden-shifting analysis. Id. To make out a prima face case, Plaintiff must show "(1) she engaged in a protected activity; (2) [Defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006) (citation and footnote omitted).

Plaintiff engaged in protected activity by taking FMLA leave for a serious health condition and Defendant approved her use of FMLA leave. Any reasonable employee would have found Plaintiff's termination materially adverse. Thus, the remaining issue is whether Plaintiff demonstrated a causal connection between her taking leave and the termination.

10

Plaintiff first argues the temporal connection is enough to establish causation; however, the Tenth Circuit has stated the Plaintiff must not rely on temporal proximity alone unless the termination was very closely connected to the protected activity. Metzler, 464 F.3d at 1172. Thus, the Court must consider temporal proximity as a relevant factor when determining if pretext for retaliation is present. Id. The Court has examined the events and their temporal proximity of Plaintiff's requests for FMLA leave, performance issues, work assignment changes, growth of the department, and Plaintiff's unilateral offloading of duties onto another employee before the termination. Finally, Plaintiff alleges that when performing her payroll duties, she was required to deduct paid time off for herself and not for similar activities for other employees. However, when considering the events as a whole, the payroll deduction is not enough for Plaintiff to bear her burden of production. The temporal proximity of Plaintiff requesting leave is not very close to the termination and is intervened by undisputed performance issues unrelated to Plaintiff's health. The Court finds Plaintiff has not established a pattern of conduct giving rise of an inference of retaliatory animus.

As discussed above, Plaintiff has not demonstrated the acts complained of were connected to the FMLA leave request. The facts do not demonstrate "evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive required" for the prima facie showing. Metzler, 464 F.3d at 1172 (citation omitted). Defendant has shown a legitimate, nonretaliatory reason for its termination decision, especially since the disciplinary action was taken the day before Plaintiff submitted her FMLA leave request. The retaliation claim fails as a matter of law.

## CONCLUSION

For the reasons stated, Defendant Cedar Creek, LLC's Motion for Summary Judgment (Dkt. No. 24) is GRANTED in part and DENIED in part. The failure to accommodate claim remains.

IT IS SO ORDERED this 19th day of December, 2017.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge